IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DAVID D. MELTON, | ) | Civil No.: 3:13-cv-01989-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Karen Stolzberg
Attorney at Law
11830 SW Kerr Parkway, #315
Lake Oswego, OR 97035

       Attorney for Plaintiff

Billy J. Williams, Acting U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Jordan Goddard
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

       Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff David Melton brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.  The Commissioner concedes certain errors by the ALJ and moves for an Order remanding the action for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

For the reasons set out below, this action should be remanded for further proceedings.

## **Procedural Background**

Plaintiff filed applications for Social Security Income (SSI) benefits and for a period of disability and DIB on September 24, 2009, alleging that he had been disabled since August 15, 2000.  After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

On June 13, 2011, a hearing was held before ALJ Steve Lynch.  On June 20, 2011, ALJ Lynch issued a partially favorable decision finding that Plaintiff was not disabled prior to September 24, 2009 but became disabled on that date and continued to be disabled through the date of his decision.  Plaintiff was thus entitled to SSI benefits. However, ALJ Lynch also found that because Plaintiff was not under a disability at any time through December 31, 2005, his date last insured, Plaintiff was not eligible for disability insurance benefits.

Plaintiff requested review by the Appeals Council of the ALJ's partially unfavorable decision. In support of his request for review, Plaintiff submitted additional evidence, including Clackamas County Community Health medical records for the period from September 15, 2011

to July 31, 2013; Third Party Statements from Lee James Pond and Sandra Pond dated August 19, 2012; Third Party Statements from Alan Melton dated July 29, 2013 and August 23, 2013; a medical source statement from Sara Gerth dated August 6, 2013 with accompanying treatment notes for the period from January 28, 2010 to July 25, 2013; a benefits denial decision from the State of Oregon Employment Department dated March 29, 1996; an employee communication dated November 14, 1994; and a psychological evaluation by Scott Alvord, Psy.D., dated August 15, 2013. Tr. 2; Dkt. 16-20.

    The Appeals Council found that the new evidence either related to a time after September 24, 2009, the date the ALJ found Plaintiff to be disabled or to a period of time prior to Plaintiff's alleged onset date. Accordingly, it did not consider the new documentation or include it in the administrative record for Plaintiff's present claim. Tr. 2. When the Appeals Council declined to review the matter, the ALJ's decision became the final agency decision which is now on appeal to this court. 20 C.F.R. § 404.981; Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161–62 (9th Cir.2012).

## **Factual Background**

    Plaintiff was born in 1960 and was 51 years old at the time the ALJ issued his decision. He graduated from high school and has a bachelor's degree in humanities. He has past relevant work as a production assembler, clean up worker and electronic tester.  Plaintiff testified that he last worked in July of 2002.Tr. 34.

## **Medical Record**

    When Plaintiff was eight years old he was involved in a motor vehicle accident.  Upon arrival at the hospital, he was unconscious, his right pupil was dilated and fixed and he was

FINDINGS AND RECOMMENDATION – 3

responding only to painful stimuli with decerebrate posturing.[1]  He had an upper airway
obstruction and bilateral Babinski signs.[2]  He was managed in Intensive Care and gradually
began to improve.  He remained paralyzed in the right arm and leg.  He continued to become
more alert and after approximately one month as an inpatient was transferred for convalescent
care. Hospital discharge notes described "brain stem midbrain contusion and probable left
cortical contusion. He was able to be fed by mouth, was responding and was recognizing his
parents. He continued to have right side Babinski sign and "marked weakness of the right arm
and leg." Tr. 226.

The next medical evidence of record is a brief chart note from January 1, 1996 indicating
treatment for a urinary tract infection.

Oregon Department of Human Services (DHS) Vocational Rehabilitation Counselor Bob
Weaver submitted a written statement in October 2002 referencing a 1997 determination of
Plaintiff's eligibility for vocational rehabilitation services. That determination was based, at least
in part, by an evaluation and diagnosis made by a Dr. Gary Sacks. The DHS report indicates Dr.
Sacks diagnosed Plaintiff with traumatic brain injury with dementia. It notes that Dr. Sacks
evaluated Plaintiff with "impaired motor processing and visuospatial analysis skills, significant
impairment of manual dexterity, short-term memory, problem solving and attention." Dr. Sacks'
evaluation is, itself, not in the record.

---

[1] "Decerebrate posture is an abnormal body posture that involves the arms and legs being held straight out, the toes
being pointed downward, and the head and neck being arched backwards. The muscles are tightened and held
rigidly. This type of posturing usually means there has been severe damage to the brain." National Institutes of
Health MedlinePlus, https://www.nlm.nih.gov/medlineplus/ency/article/003299.htm

[2] Babinski sign or Babinski reflex is a normal reflex in children up to two years old and occurs after the sole of the
foot has been firmly stroked.  Presence of the reflex in children older than two years or in an adult is often a sign of
a brain or nervous system disorder, including brain injury. National Institutes of Health MedlinePlus,
https://www.nlm.nih.gov/medlineplus/ency/article/003294.htm

Plaintiff testified he received no medical care between 2000 and 2005.

In October 2009, Dr. John Ellison, MD saw Plaintiff for a consultative physical evaluation. Plaintiff reported that he had shaky hands, short-term memory loss and poor coordination, that he was unable to walk straight, that his left arm always just hung at his side and he had shoulder and back pain and poor "bone structure." Plaintiff reported that he drank two or three 24 ounce beers five days a week, used cocaine in the remote past and occasionally used marijuana.

Dr. Ellison noted that Plaintiff had a "spastic" gait and station, spasticity in all limbs, impaired balance and was not able to walk tandem but could walk on his heels and toes. Plaintiff demonstrated involuntary movements of the left limbs and had difficulty reaching, gripping, grasping, and manipulating large and small limbs. Babinski sign was positive on the right. Dr. Ellison noted that Plaintiff was alert and attentive and demonstrated normal language skills, although he printed "jerkily;" that he was able to repeat of string of seven digits accurately; was oriented x3 and able to name a recent newsworthy item and the past presidents through President Ford; was "very quick" with serial 7s and calculating the number of nickels in $1.35 and the number of quarters in $3.75. Plaintiff was not able to memorize three unrelated words and then repeat them five minutes later but did remember two of the words with clues. Dr. Ellison diagnosed Plaintiff with "status post severe head injury age 6 with resultant spasticity in all limbs worse on the left side, ataxia, falls;" chronic alcoholism; chronic depression with suicidal ideation; and hypertension.

In a report dated November 10, 2009, state agency reviewing physician, Neal Berner, MD, opined that the severity of Plaintiff's impairment met Listing 11.18 as evaluated under 11.04 B due to sustained disturbance of gross motor and dexterous movements as well as

significant disturbances of station and gait. Dr. Berner noted that some aspects of Plaintiff's condition had worsened.

In November, 2010, Plaintiff was treated at Kaiser Permanente for abdominal/chest pain. Treatment notes indicate Plaintiff demonstrated an abnormal gait, abnormal muscle tone and "residual partial left hemiparesis."

## Lay Witness Evidence

Plaintiff's brother, Alan Melton, provided a Third Party Function report dated October 19, 2009; a written statement dated January 13, 2010; and responded to telephone interview questions regarding Plaintiff's condition that were documented on October 29, 2009. Exs. 4E, 11E, 14E.

In the Third Party Function report, Alan Melton stated he saw Plaintiff during holidays and birthday celebrations.  He indicated that Plaintiff had a lack of coordination that affected his ability to lift, squat, bend, stand, walk, concentrate and use his hands.  He was able to attend to his personal care, cooking, cleaning and laundry but these tasks took longer than average to complete. Plaintiff could not safely use power tools or drive a car and did not handle stress or changes in routine well.  Plaintiff had been fired or laid off from his job because he was "hard to work with" and his "frustration with disability causes issues." Tr. 153.

In a Report of Contact dated October 29, 2009, Alan Melton's responses to a telephone interview were documented by an Agency representative. Tr. 193. Alan Melton indicated that there had been some worsening in his brother's condition but that he had "always been like this since the accident."  Alan Melton stated that he had been his brother's employer but had found it necessary to let him go and cited "social reasons" and "brother stuff" as a basis for the

termination. He stated that Plaintiff had received some minor accommodations at work in that he was given more latitude with respect to production demands.

In a letter dated January 13, 2010, Alan Melton wrote that Plaintiff had walked with a limp and he experienced shakes in his arm since his accident in 1968. He wrote that over the previous ten to fifteen years the long-term effects of Plaintiff's accident had "severely limited [his] ability to work and function normally anymore." He described Plaintiff as having "social, emotional, and physical issues that have made [him] unable to work any longer."

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment

is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.

20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform

relevant work he or she has done in the past.  A claimant who can perform past relevant work is

not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the Medical-

Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner

demonstrates that a significant number of jobs exist in the national economy that the claimant

can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant

is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  Id.

## ALJ's Decision

As an initial matter, the ALJ found that Plaintiff had last met the requirements for insured

status on December 31, 2005.

At the first step of the disability assessment process, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.

At the second step, the ALJ found that Plaintiff's traumatic brain injury was a "severe" impairment.

At the third step, the ALJ found that prior to September 24, 2009, Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1. However, the ALJ found that beginning on September 24, 2009, the severity of Plaintiff's impairment met the criteria of Listing 11.18 of 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that prior to September 24, 2009, Plaintiff retained the capacity to perform light work with the exception that he could perform only simple, entry-level work.

Based upon the testimony of the VE, at the fourth step the ALJ found that prior to September 24, 2009, Plaintiff was capable of performing his past relevant work as a production assembler and clean up worker.

Based on his conclusion that Plaintiff could perform his past relevant work prior to September 24, 2009, the ALJ found that Plaintiff was not disabled before that date and was not under a disability within the meaning of the Act at any time through December 31, 2005, his date last insured.  The ALJ found that Plaintiff became disabled on September 24, 2009 and continued to be disabled through the date of his decision.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66

F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the

burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and

bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process.  Tackett, 180 F.3d at 1098.

   The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

   Plaintiff asks this court to consider evidence the Appeals Council declined to accept and

to remand for payment of benefits based on that evidence and the record as a whole.  Plaintiff

also contends that the ALJ (i) erred in failing to call on a medical expert to assist in inferring

onset date, (ii) failed to provide sufficient reasons supporting his conclusion that Plaintiff was

not wholly credible, (iii) erred in failing to find that Plaintiff's traumatic brain injury (TBI) met

or equaled listing 11.18 prior to September 24, 2009, (iv) failed to fully develop the record and

(v) erred in assessing Plaintiff's RFC for the period prior to September 24, 2009.

FINDINGS AND RECOMMENDATION – 10

The Commissioner concedes that the ALJ erred in failing to call a medical expert to assist in inferring onset date and, relatedly, may have erred in determining Plaintiff's RFC prior to September 24, 2009 and in finding that Plaintiff's impairment did not meet or equal Listing 11.18 prior to that date. The Commissioner does not concede that the Appeals Council's decision to not supplement the record is reviewable error or that the ALJ erred in his credibility determination or by failing to fully develop the record. The Commissioner seeks remand for further administrative proceedings, including consultation with a medical expert regarding the question of onset date.

## I.  **Post Hearing Evidence**

After the ALJ issued his decision, Plaintiff submitted additional evidence to the Appeals Council in support of his request for review. This evidence is not in the record, but was appended to Plaintiff's submissions to the court. The Appeals Council declined to review the ALJ's decision. Tr. 1–7. I do not have jurisdiction to review the Appeals Council's decision to deny review because it was not a final decision of the agency. Brewes, 682 F.3d at 1161; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231 (9th Cir.2011).

In issuing its denial, the Appeals Council wrote that it "looked at the additionally supplied evidence" but declined to consider the evidence created after the ALJ's decision because it did not relate to the period under review by the ALJ. Tr. 2. Plaintiff argues that the Appeals Council erred when it declined to consider this new evidence.

In seeking review from the Appeals Council, a claimant may submit "any new and material evidence ... which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976(b)(1). The Appeals Council is required to "consider" evidence it determines relates to the relevant time period on or before the ALJ's

decision. 20 C.F.R. §§ 404.970(b), 416.1476(b)(1) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). The district court must review the ALJ's decision based on the record as a whole, including evidence produced after the ALJ's decision that was *considered* by the Appeals Council *and made part of the administrative record*. Brewes, 682 F.3d at 1162; Ramirez v. Shalala, 8 F.3d 1449, 1451–52 (9th Cir.1993).

Here the Appeals Council did not consider the additional evidence or make it part of the administrative record.  Thus, it is not part of the record before this court and Plaintiff cannot now rely upon it to support his challenge of the ALJ's decision. See, e.g., Barrington v. Colvin, No. 1:13–CV–01512–JO, 2014 WL 5342371, at *8 (D.Or. Oct. 20, 2014) (evidence the Appeals Council determined "did not relate to the period under review" was not a part of the administrative record before the court); See also, Oetinger v. Astrue, No. CIV. 10–379–PK, 2011 WL 4406308, at *2 (D.Or. Aug. 23, 2011) report and recommendation adopted, No. 3:10–CV–379–PK, 2011 WL 4405851 (D.Or. Sept. 19, 2011).

The Court may nonetheless remand Plaintiff's case to the Commissioner for consideration of new evidence pursuant to 42 U.S.C. § 405(g) sentence six. To justify a remand order from this court under sentence six, Plaintiff must show that the evidence is (1) material, and (2) he had good cause for failing to produce it earlier. 42 U.S.C. § 405(g) (sentence six: a court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record"), Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir.2001).

FINDINGS AND RECOMMENDATION – 12

Plaintiff does not request relief under sentence six and fails to demonstrate that such relief is warranted.  He instead argues that the Appeals Council "has been taking a more and more rigid position regarding evidence submitted to it post hearing" and that such "a policy . . . should be quashed promptly and effectively." Pl. Brief 14. Such a generalized and unsubstantiated assertion is unpersuasive.  Plaintiff has failed to demonstrate that the post-hearing evidence submitted to and rejected by the Appeals Council is either material or meets the good cause requirement.  The Clackamas County Community Health medical records; the Third Party Statements from Lee James Pond and Sandra Pond and Gerth's medical source statement all clearly post-date and relate to the period of time after Plaintiff's date last insured and after the ALJ's hearing decision.  This additional evidence, therefore, does not constitute a basis for remand under 42 U.S.C. § 405(g) sentence six.

The psychological evaluation by Scott Alvord, Psy.D. is dated two years after the ALJ's decision and more than eight years after Plaintiff's date last insured. Although Plaintiff argues that Dr. Alvord's opinion relates to a period of time  prior to the ALJ's decision, nothing in the record suggests that Plaintiff could not have obtained a psychologist's report prior to the ALJ's decision.  Plaintiff must establish good cause for failing to submit this new evidence earlier. Mayes, 276 F.3d at 462. To demonstrate good cause, Plaintiff must show that the new evidence was unavailable at the time of his hearing. Mayes, 276 F.3d at 463. He may not establish good cause simply by obtaining a more favorable expert opinion after the ALJ has denied his claim. Clem v. Sullivan, 894 F .2d 338, 332 (9th Cir.1990), citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985). Plaintiff does not explain why he did not seek or could not have obtained this evaluation before the ALJ's hearing and Plaintiff's attempt to establish good cause by asserting that he was represented at the hearing by a non-attorney is inapt.

FINDINGS AND RECOMMENDATION – 13

Plaintiff has also failed to address either the materiality or good cause requirements with respect to the 1994 employee communication or the 1996 benefits denial decision and this court will not, therefore, review this evidence.

Finally, Plaintiff argues that Third Party Statements from Plaintiff's brother, Alan Melton, dated July 29, 2013 and August 23, 2013 should have been considered by the Appeals Council and incorporated into the administrative record.  Again, however, Plaintiff does not address why he failed to submit this new evidence earlier.  This is a particularly fatal flaw in light of the fact that prior to Plaintiff's hearing before the ALJ, Alan Melton did provide a written statement and Third Party Function report and respond to telephone interview questions regarding Plaintiff's condition. Exs. 4E, 11E, 14E. These earlier statements were in the record before both the ALJ and the Appeals Council.  Plaintiff's attempt now to augment the record with a more favorable statement is insufficient to warrant a sentence six remand.  Mayes, 276 F.3d at 463.

Unlike the situation in Taylor where the court held it could properly review evidence that was submitted to, considered and rejected by the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error," Taylor, 659 F.3d at 1231–33; the Appeals Council here did not consider the evidence discussed above and it has not been made part of the administrative record.  The additional evidence is therefore not properly before this court on appeal and is an inappropriate basis for an order remanding for an award of benefits. For the reasons discussed above, I conclude that remand for consideration of this new evidence under 42 U.S.C. §405(g) sentence six is also not warranted.

FINDINGS AND RECOMMENDATION – 14

## II. **Compliance with SSR 83-20**

Plaintiff contends that the ALJ failed to comply with SSR 83-20 because he did not call upon a medical expert to testify regarding the onset of his disability. Social Security Ruling 83–20 states, in relevant part:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.
> * * *
> At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20. The Ninth Circuit has explained that this means that "[i]n the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." DeLorme, 924 F.2d 841 at 848.

Here the record shows that Plaintiff has been found to be disabled after his date last insured and is receiving SSI benefits. The requirements of SSR 83-20 are triggered when evidence regarding a plaintiff's onset date is not definite and medical inferences are required. I agree with Plaintiff that the ALJ erred by failing to call upon the assistance of a medical expert to make a determination as to onset date. The Commissioner concedes this error and moves for remand for further proceedings so that the ALJ may comply with SSR 83-20. The Commissioner's motion should be granted.

## III. **Plaintiff's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide

"clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80

F.3d 1273, 1281 (9th Cir.1996); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). If

substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some

of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security,

533 F.3d 1155, 1162 (9th Cir.2008).

Because Plaintiff here produced evidence of impairments that could reasonably be

expected to produce some symptoms and there was no affirmative evidence of malingering, the

ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's

statements regarding his symptoms and limitations were not wholly credible.  Plaintiff contends

that the ALJ erred in his credibility determination because he found that Plaintiff's statements

concerning his impairments prior to September 24, 2009 were not credible "to the extent they are

inconsistent with the residual functional capacity assessment." Tr. 24.  Plaintiff asserts that this

statement represents "illogical, circular reasoning" that fails to meet the obligation to provide

clear and convincing reasons for finding Plaintiff's statements less than wholly credible.

Inclusion of a finding that a claimant's statements are not credible "to the extent they are

inconsistent with the residual functional capacity assessment" has become a common practice in

decisions denying applications for disability benefits. See, e.g., Tilton v. Astrue, 2011 WL

4381745, Slip. Op. at 30 n. 5 (D.Or.2011) (noting frequent appearance of statement in ALJ

decisions).  I have previously addressed challenges to the inclusion of similar language in other

ALJ decisions. See Wagle v. Astrue, No. 3:11-CV-00049-JE, 2012 WL 5303300, at *7 (D. Or.

Oct. 1, 2012) findings and recommendation adopted, No. 3:11-CV-00049-JE, 2012 WL 5303307

(D. Or. Oct. 23, 2012). In Wagle, I drew the distinction between use of such a statement as a

"boilerplate" description of the manner in which a claimant's credibility has been evaluated or

FINDINGS AND RECOMMENDATION – 16

explanation of why a claimant's testimony has been found less than wholly credible and its use as merely an introduction of the discussion of a Plaintiff's credibility that indicates the degree to which the ALJ has found that a Plaintiff's statements are not wholly credible.  I concluded that this first usage is inadequate to properly support a credibility determination; see, e.g., Allen v. Astrue, 2012 WL 2921454 at 8 (D.Or.2012) ("boilerplate" statement that claimant is not credible to extent testimony is inconsistent with RFC used inappropriately in many decisions; does not provide reasons required to discredit testimony).  However, the inclusion of the latter type of statement is not a basis for setting aside a credibility determination that is otherwise sound.

In the present action, the ALJ's "boilerplate" assertion that Plaintiff was not credible to the extent his statements were inconsistent with the RFC cannot be fairly characterized as the reason supporting the determination that Plaintiff was not wholly credible. The ALJ also specifically cited Plaintiff's work history and his history of substance abuse as reasons for discounting Plaintiff's credibility.  Plaintiff has not challenged those reasons and, therefore, any contention that they are insufficient is deemed waived.  See, e.g., Carmickle, 533 F.3d 1155 at 1161 n. 2(courts will not consider matters not specifically argued in opening brief).

## IV. Development of the Record

Plaintiff contends that the ALJ's treatment of a January 13, 2010 written statement by Alan Melton was "inadequate."  Plaintiff argues that Alan Melton's reports describing Plaintiff as having been severely limited in his ability to work over the previous ten to fifteen years should have prompted the ALJ to have called Alan Melton to the hearing to provide further information regarding his brother's limitations. I disagree.

The ALJ has a duty to fully and fairly develop the record, and to ensure that a claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.2001). However, as

FINDINGS AND RECOMMENDATION – 17

the Commissioner correctly notes, an ALJ is required to further develop the record only if the existing evidence is ambiguous, or if the record is inadequate to allow for "proper examination of the evidence." Id.

Plaintiff identifies no ambiguity or inadequacy in Alan Melton's statements that would require the ALJ to further develop the record with regard to his lay testimony. After a review of the record, including the multiple statements submitted by Alan Melton and the ALJ's assessment of those statements, I conclude that the ALJ did not err in not calling Alan Melton to the hearing.

## V. **Plaintiff's Additional Contentions**

Having concluded that remand for further proceedings is necessary and in light of the Commissioner's concession that the ALJ may have erred in determining Plaintiff's RFC prior to September 24, 2009 and in finding that Plaintiff's impairment did not meet or equal Listing 11.18 prior to that date, I do not offer findings on these additional issues. On remand, the ALJ should be directed to hold a new hearing and call upon a medical expert to assist in determining onset date. Relatedly, the ALJ should be directed to also reevaluate Plaintiff's RFC and the application of Listing 11.18 to Plaintiff's impairment for the period prior to September 24, 2009.

## Conclusion

For the reasons set out above, a judgment should be entered REVERSING the Commissioner's decision and REMANDING this action for further proceedings. The judgment should provide, on remand, that the ALJ must hold a new hearing and call upon a medical expert to assist in determining onset date; must reevaluate Plaintiff's RFC and the application of Listing 11.18 to Plaintiff's impairment for the period prior to September 24, 2009; and conduct any additional proceedings as required by conclusions based upon the above instructions.

FINDINGS AND RECOMMENDATION – 18

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due November 16, 2015.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of October, 2015.


 /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge